IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                                                                                                 REPORT AND
                  Plaintiff,                                     RECOMMENDATION

     v.

                                                                                                07-CR-140-C

CALVIN WATSON,

                  Defendant.
_____

## REPORT

        The grand jury has charged defendant Calvin Watson with violating 18 U.S.C. § 922(g) by unlawfully possessing a Norinco assault rifle, three clips of ammunition, and a Ruger .44 pistol recovered from the trunk of a car in which he was a passenger following a traffic stop. Before the court is Watson's motion to suppress all of the evidence derived from the traffic stop. In his motion and at a status conference, Watson alleged that it was improper for the police to base a traffic stop on a burned-out license-plate bulb. In his post-conference briefs, Watson raised new arguments. The government responds that the stop was valid at the outset, Watson has waived his additional arguments, and that in any event the stop remained reasonable from start to finish. For the reasons stated below, I conclude that there is no basis to suppress evidence in this case.

        At a December 18, 2007 telephonic status conference, the parties agreed that there was no need for an evidentiary hearing because the police reports of the contested stop provided all of the relevant facts. *See* Transcript, dkt. 20, at 15.

**FACTS**

On the evening of August 30, 2007, an anonymous citizen ("Caller") telephoned the Madison Police Department's non-emergency number to report that some people in a maroon Dodge Intrepid were driving from the Allied Drive neighborhood to West Towne Mall with assault weapons in the trunk of their car. At about 9:00 p.m. that night the Madison Police Department dispatched officers to West Towne to locate the vehicle and to investigate.

Caller was available telephonically and one of the officers, Kenneth Mulry, spoke with him for over an hour while searching for the car. Caller identified himself as a black male. He adamantly refused to identify himself by name, claiming that he had assisted the police before on the condition of anonymity but that his name had ended up in the police report anyway. Caller insisted that he would not have called unless he was sure that real firearms would be found in the car, and that he viewed this as a very serious matter. Caller related that he had spoken with MPD Lieutenant Strong many times before about similar issues (guns on Allied Drive) and that if Officer Mulry checked, Lt. Strong would know exactly who Caller was. Caller also reported that he had spoken with MPD Chief Wray at a recent Allied Drive picnic about a youth task force.

Caller explained that earlier that same evening, he had been sitting with his girlfriend in a car behind an Allied Drive apartment complex when he saw two MPD officers arrest someone. Officer Mulry was able to confirmed that at 6:30 p.m. on August 30, 2007, two MPD officers had arrested a person at 2218/2222 Allied Drive. Shortly thereafter, two people drove in and parked a maroon Dodge Intrepid. The driver was a white woman, her passenger a black man.

They were close enough to Caller that he could hear conversation. A group gathered around the car to chat and smoke blunts. The group ignored Caller and his girlfriend.

During the group chat, the man who had been a passenger in the car went to the trunk, retrieved what appeared to be a Glock pistol, removed the magazine, and handed it to another man in exchange for a large wad of cash. During this exchange, Caller saw the car passenger handle an assault rifle with a pistol grip and some banana clips in a green army-style duffel bag in the trunk. Caller heard the woman tell the man that she was going to pick up her daughter at the West Towne Mall food court, then she wanted to go to "Tucson." Caller told Officer Mulry that he thought this was a reference to the nearby Tucson Trails apartment complex with which caller was familiar. Caller shared his impression that the woman wanted no part of this matter but was doing so at the insistence of her passenger.

Police surveillance at West Towne was unsuccessful so two officers drove to the Tucson Trails apartments on Muir Field Road, about four miles south of West Towne. They observed a maroon Dodge Intrepid parked at 3172 Muir Field Road. Their colleagues left West Towne to join them there. At Officer Mulry's request, Caller provided additional details about the car he was talking about: he said there were dents on the front, a green cup was in a cupholder, and the backseat held a black case with a gray top. Caller described the woman driver as about 30 years old, 5'7" with a hefty build and a mullet haircut, wearing a blue shirt and cut jeans. Her male passenger was early 30s, 5'6" to 5'8", hefty build, chin hair, wearing jeans, a dark shirt with thin stripes, and a dark hat sporting an emblem.

The Intrepid at Muir Road had front dents and a toolbox on the back seat. The car was registered to Cheryl Masino who was known to the police. Masino's home was on Russett Road, but she also used the address of 3172 Muir Field Road. Masino was a known associate of Calvin Watson, whose criminal history included a series of weapons offenses. The surveilling officers pulled up photos of Masino and Watson; they matched Caller's physical descriptions.

Just before midnight, Masino and a man believed to be Watson entered the car and drove away. The MPD officers followed. Officer Bart O'Shea noted that the Intrepid's rear license plate was not illuminated, a violation of Wisconsin's vehicular code. With two other squad cars ready to assist, Officer O'Shea activated his emergency lights. When Masino pulled over, police conducted a "high risk" stop, training their weapons on Masino and Watson, removing them from the car and handcuffing both. They were wearing the clothing described by Caller.

MPD Sergeant Quast spoke with Masino and had her cuffs removed. Sergeant Quast asked Masino about her passenger. She identified him as Calvin Watson and said he was on probation for "guns." Sergeant Quast asked Masino for permission to search her car. She said "go ahead." Officers recovered from the trunk of Masino's car the AK-47 knock-off, Ruger pistol and ammunition charged against Watson in this federal prosecution.

**ANALYSIS**

Watson does not dispute that at the time police stopped Masino's car, the rear license plate was not illuminated. This is a violation of Wisconsin's motor vehicle code. *See* Wis. Stats. § 347.13(3). Therefore, it was reasonable for the police to stop Masino's car. *See United States*

*v. Thomas*, ___ F.3d ___, ___WL ___, Case No. 07-1237, slip op. at 3, 6 (7th Cir. January 7, 2008). This is true notwithstanding the pretextual nature of the stop. *See Whren v. United States*, 517 U.S. 806, 810, 813 (1996); *United States v. Cashman*, 216 F.3d 582, 586-87 (7th Cir. 2000). A motorist legally may be stopped and arrested for any petty regulatory violation, such as failing to wear a seatbelt, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), driving with a cracked windshield, *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002)(*en banc*), and driving with a dangling air freshener, *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996). It is constitutionally irrelevant whether the offense on which the arrest is premised ordinarily is handled less seriously, *see Childs*, 277 F.3d at 953; therefore, the police may use felony stop procedures when pulling over a car. If Watson's only theory of suppression is that the evidence against him derives from a stop that was unlawful at its inception, then he loses and this report and recommendation is over.

      This is because Watson did not timely raise or preserve the additional suppression arguments raised in his brief. Pursuant to F.Rs. Crim. Pro. 12(b)(3), 12(c) a defendant's motion to suppress evidence must be filed and served within the deadline filed by the court. Rule 12(e) states that a party waives any suppression issue not raised within the court's deadline, although the court may grant relief for good cause. In this case, Watson timely filed a motion to suppress evidence on the ground that "the seizure of the Defendant and Cheryl Masino was illegal and without probable cause in violation of the Fourth Amendment." *See* dkt. 19 at 1. Watson also asserted that if he made any post-arrest statements, they were involuntary. (Since there are no post arrest statements, this assertion is academic). In the factual proffer and legal argument that

followed within the motion, Watson argued that the initial traffic stop was improper, so that all evidence derived therefrom and thereafter had to be suppressed. *Id.* at 2- 12.

Although Watson did not ask for an evidentiary hearing, the nature of his motion suggested that the *government* might wish to take evidence, so I convened a telephonic status conference with the attorneys to nail down Watson's theories of suppression and then to determine if we needed to take evidence on any of them. Watson's attorney specifically disavowed reliance on any theory of suppression other than the legality of the stop. *See* Transcript of Dec. 18, 2007 hearing, dkt. 20, at 11, 13, 14 - 16 and 18. I find, however, that Watson did not waive his argument that it was improper for the police to employ the intrusive tactics of a "high risk stop" against him as a passenger in the car. This fits within the announced limitations of his Fourth Amendment challenge to the car stop.

Watson wasn't driving, so he had not committed the traffic offense of driving with an unlit license plate. Therefore, unless the police had reasonable suspicious to justify Watson's investigative detention, he should have been free to go. *See Terry v. Ohio*, 392 U.S. 1 (1968). They did, so he wasn't. Further, given the nature of the evidence supporting their reasonable suspicion, the police were justified drawing their guns on Watson and placing him in handcuffs while they investigated further. *See United States v. Askew*, 403 F.3d 496, 508 (7th Cir. 2005); *United States v. Tilmon*, 19 F.3d 1221, 1224-25 (7th Cir. 1994).

But this issue is not pertinent to Watson's motion to suppress the firearms found during the consent search. Even if the police had never drawn their guns but had allowed Watson to leave the scene, Masino and her car would have remained. Masino obviously had authority to

consent to the search of her own car.[1]  There is no connection between anything the police did to Watson and their discovery of the evidence.  Even if the forcefulness or length of the traffic stop were to have violated Masino's rights (they didn't, see below), this couldn't help Watson because Fourth Amendment rights are personal rights that cannot be vicariously asserted.  *See Henning v. O'Leary*, 477 F.3d 492, 495 (7th Cir. 2007).

This analysis is analogous to the inevitable discovery doctrine, *see United States v. Johnson*, 495 F.3d 536, 543 (7th Cir. 2007), but it's not a precise match because the officers' path to the contraband did not follow two tracks, it only followed one.  Their treatment of Watson was a parallel spur that dead-ended before the police opened the car trunk.  At most, Watson would have a § 1983 claim against the police, but on these facts, it would go nowhere.  The evidence known to the police from their quasi-confidential informant, their corroboration of Caller's information, and their knowledge of Masino and Watson's backgrounds were sufficient to justify the investigative detention of Watson prior to discovery of the weapons in the trunk.  *See United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007)(defining reasonable suspicion); *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006)(same); *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007)(weighing an informant's report); *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003)(same); *United States v. Hendrick*, 319 F.3d 993, 1002 n.2 (7th Cir. 2003)(liberalizing the definition of "anonymous" for telephone tipsters).

---

[1] In his briefs, Watson claims for the first time that Masino's consent was involuntary.  This is a claim that Watson has standing to raise but he has waived it under Rule 12(e), he has not properly supported it with an affidavit from Masino, and this claim does not mesh with the police reports that Watson has accepted as accurate accounts of the salient facts.

In sum, the police did not violate anybody's constitutional rights. Watson is the victim of nothing more than a tenacious, well-executed investigation. There is no basis to suppress any evidence in this case.

## RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Calvin Watson's motion to suppress evidence.

Entered this 22nd day of January, 2008.

> BY THE COURT:
> /s/
> STEPHEN L. CROCKER
> Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of     Telephone
STEPHEN L. CROCKER     (608) 264-5153
U.S. Magistrate Judge

January 23, 2008

Rita Rumbelow
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53703-1585

Christopher Duren
Duren Law Offices, Llc
P.O. Box 96
Waunakee, WI 53597

    Re: United States v. Calvin Watson
        Case No. 07-CR-140-C

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before February 4, 2008, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by February 4, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

        Sincerely,

        /s/ S. Vogel for

              Connie A. Korth
              Secretary to Magistrate Judge Crocker

Enclosures

cc:  Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those

portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).